IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Leslie A. Perkins, :

    Plaintiff, :

  v. :   Case No. 2:14-cv-32
:   JUDGE GREGORY L. FROST
Commissioner of Social Security,   Magistrate Judge Kemp
:
    Defendant.

REPORT AND RECOMMENDATION

I. Introduction

    Plaintiff, Leslie A. Perkins,, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits. That application was filed on May 31, 2010, and alleged that Plaintiff became disabled on December 12, 2009.

    After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on June 21, 2012. In a decision dated August 9, 2012, the ALJ denied benefits. That became the Commissioner's final decision on November 12, 2013, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on April 8, 2014. Plaintiff filed her statement of specific errors on May 12, 2014, to which the Commissioner responded on August 29, 2014. No reply brief has been filed, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

    Plaintiff, who was 50 years old at the time of the administrative hearing and who has a high school education, testified as follows. Her testimony appears at pages 35-50 of the administrative record.

    Plaintiff's last job was a part-time position as an

administrative assistant.  She was let go in December, 2009, after having had a crying and anxiety spell at work.  She had also worked selling furniture and as a waitress.  Finally, she did courthouse research for mortgage brokers.

   Plaintiff was asked how she was affected by fibromyalgia, one of her diagnosed conditions.  She replied that she never knew from one day to the next how she would feel.  Most days were "medium" days but she always had pain between her shoulder blades.  She also experienced pain in her back and hips and muscle spasms in her forearms and wrists.  She was being treated with medication, and had also done yoga and physical therapy and had chiropractic adjustments every few weeks.

   For several years, Plaintiff had been seeing a therapist, and was seeing a psychiatrist more recently.  She had been taking medication for anxiety and panic disorders for a number of years.  Her anxiety disorder sometimes prevented her from leaving the house and she tried to avoid social situations.  Those situations triggered panic attacks, but she could also have an attack while home alone.

   On a typical day, Plaintiff did housework and laundry.  She also had relaxation exercises which she would do for fifteen or twenty minutes after she was active for a while.  She could cook but found it hard to clean up after a meal due to repetitive arm motions.  She shopped for small amounts of groceries.  She could take care of her personal needs.  Plaintiff said she could walk for fifteen minutes at a time, could stand in one place for only five minutes, and could not stoop, kneel, crouch, or crawl.  Bending was possible but painful.  She could lift five or ten pounds but had trouble gripping objects.  She could sit for ten or fifteen minutes at a time.  If she had to alternate sitting or standing for an eight-hour day she could not do so without lying down and doing stretching exercises.  Most days, the amount of

medicine she needed to take made her drowsy.

### III. The Medical Records

The medical records in this case are found beginning on page 237 of the administrative record. The pertinent records - those relating to the issues raised in the Statement of Errors - can be summarized as follows.

Dr. Adams, who had been treating Plaintiff since 1992, completed a form in 2010 noting that she had multiple diagnoses including diabetes, hypothyroidism, fibromyalgia, and anxiety. Her symptoms included fatigue and pain. He stated that due to her disorders, he did not believe Plaintiff could gainfully work. (Tr. 237-40).

Dr. Schulz, a clinical psychologist, performed a consultative evaluation on October 13, 2010. Plaintiff told him that she could not work due to fibromyalgia and chronic pain. She had gone to a counselor for three months in 2008. She did not demonstrate any signs of a disturbed mood. Plaintiff said she had panic attacks once per year but that she had a persistent concern about having such attacks. Her memory and judgment appeared intact. Dr. Schulz diagnosed a panic disorder and a depressive disorder and rated Plaintiff's GAF at 61. He thought she would have no difficulty relating to others but was mildly impaired in the areas of understanding, remembering, and following instructions, maintaining concentration and attention to perform simple repetitive tasks, and dealing with work stress. (Tr. 244-50).

Plaintiff also underwent a consultative physical examination in 2010. The examination showed diffuse muscular pain with palpation, including the 18 tender points for fibromyalgia. It was more evident in the area of her neck and upper back. She also demonstrated some pain behavior but her muscle strength was normal. Dr. Winkle's impression was fibromyalgia, which was

Plaintiff's primary limiting factor, and a history of diabetic neuropathy. He thought she could do light work including standing for up to six hours, with breaks, but that she needed to avoid continuous lifting and bending. She could work while seated and had normal function and use of her hands. (Tr. 251-54). Subsequent medical records also showed a diagnosis of fibromyalgia with 18 tender points. There are also records of physical therapy and chiropractic treatment for fibromyalgia.

 Dr. Brandemihl, a treating psychiatrist, completed a psychiatric impairment questionnaire on April 4, 2012. At that point, he had seen Plaintiff only twice. He diagnosed major depression, a panic disorder, and generalized anxiety disorder, rated her GAF at 40, and said her prognosis was guarded. He identified a number of positive clinical findings based on a clinical status examination and reported that she had frequent panic attacks. He concluded that Plaintiff had marked limitations in many work-related areas, including being able to perform on schedule and maintain regular attendance and to complete a work week without interruptions from psychologically-based symptoms. He also thought her condition would deteriorate in a work setting and that she was not capable of performing even low-stress work. Finally, he concluded that these limitations had been present since 2006. (Tr. 394-401).

 The last opinion in the medical file was rendered by Dr. Tornick, who began treating Plaintiff on January 18, 2012. A little over a month later, he completed a Multiple Impairment Questionnaire indicating that Plaintiff had been diagnosed with diabetes, fibromyalgia, hypertension, depression, and anxiety, and that her prognosis was "Fair." She had diffuse pain on palpation, and other tests were "pending." He rated both her pain and fatigue as "9" on a scale of 1-10. He thought she could sit, stand, or walk for less than an hour each during an eight-

-4-

hour workday and that she also could not sit continuously for more than 30 minutes. She could lift and carry up to ten pounds, was limited in her ability to reach, handle, finger, and grasp, and could not do a job on a sustained basis. Fatigue would frequently interfere with her ability to attend and concentrate, and she would have to take unscheduled work breaks every half hour. (Tr. 423-30). Although this opinion appears to have been submitted to the ALJ prior to the hearing, see Tr. 422, it is not listed among the exhibits admitted or considered by the ALJ, is not discussed in her decision, and is not referred to in Plaintiff's statement of errors, so the Court will not discuss it further.

The file also contains opinions of state agency reviewers rendered at the initial stages of the case. A psychologist, Dr. Lewin, said that Plaintiff's mental impairments were not severe; Dr. Binns concluded that from a physical standpoint Plaintiff could do light work without concentrated exposure to hazards. (Tr. 59-67). Both of these opinions were confirmed by other state agency consultants.

### IV. The Vocational Testimony

Brian Womer was the vocational expert in this case. His testimony begins on page 50 of the administrative record.

Mr. Womer testified that Plaintiff's past work as an administrative assistant was skilled and sedentary; her courthouse research job was semi-skilled and light; and the furniture sales position was semi-skilled and light, although she performed it at the medium exertional level. Finally, the waitressing job was semi-skilled and light.

He was then asked some questions about a hypothetical person who could work at the light exertional level but could not work on ladders, ropes, or scaffolds or around unprotected heights and could frequently climb ramps and stairs, stoop, kneel, crouch,

and crawl. According to Mr. Womer, someone with those limitations could do Plaintiff's past work. Someone who was limited to one-step or two-step tasks and could deal with work changes or decision making only occasionally, and who also was limited to occasional interactions with coworkers, supervisors, and the general public could not, however.

Mr. Womer then was asked if a person with those additional limitations could do other jobs, and he said yes. Such jobs included small parts assembler, assembly machine tender, and laundry worker. He gave numbers for those jobs in the State and national economies. Further, he testified that someone who needed a sit-stand option and who would be off task for ten percent of the work period could still do the parts assembler job and could do other jobs like inspector and hand packager, and mail clerk. If, as part of the sit-stand option, the person had to move about for ten minutes, that would be work-preclusive; so would a restriction to working around no more than six people and not having contact with them.

Finally, Mr. Womer was asked to confirm that someone who missed two or three days per week due to pain, or even someone who missed two days per month for that or other reasons, could not do entry-level unskilled jobs. He agreed that those restrictions were not consistent with employment. Lastly, he testified that Plaintiff did have skills that transferred to some sedentary jobs like receptionist or telephone solicitor.

V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 13-23 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. Next, she found that Plaintiff had

-6-

not engaged in substantial gainful activity since her alleged onset date of December 12, 2009.  Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including fibromyalgia, depression, and panic disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level, but she had to sit or stand alternatively at will provided she was not off task for more than ten percent of the day.  Also, she could occasionally stoop, crouch, kneel, and crawl, and she could not climb ladders, ropes, or scaffolds, or be exposed to unprotected heights.  She would need to work in an environment where she only had to perform simple tasks involving no more than one or two steps, and she could not meet fast-paced production requirements.  Finally, she could not be asked to make work-related decisions more than occasionally, to deal with changes in the work more than occasionally, or to interact with others in the workplace more than occasionally.  The ALJ found that, with these restrictions, although Plaintiff could not do her past work, she could do the jobs identified by the vocational expert, including small parts assembler, inspector, and mail clerk.  The ALJ further found that such jobs existed in significant numbers in the State and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises only these issues: (1) the ALJ failed to follow the treating physician rule; (2) the ALJ did not properly evaluate Plaintiff's

credibility; (3) the ALJ did not pose a proper hypothetical question to the vocational expert that incorporated all of the restrictions contained in the ALJ's residual functional capacity finding; and (4) the ALJ did not properly consider Plaintiff's obesity.  These issues are evaluated under the following legal standard.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

        A.  <u>The Hypothetical Question</u>

The Court turns to Plaintiff's third claim of error first,

since it is clearly dispositive. Plaintiff notes a discrepancy between the ALJ's residual functional capacity and the hypothetical question posed to the vocational expert, Mr. Womer. The ALJ specifically found that Plaintiff could work only "in an environment free of face-paced [sic; should be 'fast-paced'] production requirements." (Tr. 17). No such restriction was included in any of the questions asked of Mr. Womer. Consequently, there is no testimony in the record about whether the jobs he identified, and which the ALJ found that Plaintiff could do, can be performed in that type of work environment. That would appear to run afoul of the principle that a hypothetical question about work-related limitations is proper only if it "include[s] the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." See Delgado v. Comm'r of Social Security, 30 Fed. Appx. 542, 548 (6th Cir. 2002), citing Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993); see also Howard v. Comm'r of Social Security, 276 F.3d 235, 241 (6th Cir. 2002)(a "hypothetical question [which] ... fails to describe accurately [the claimant's] physical and mental impairments ... is fatal to the VE's testimony and the ALJ's reliance upon it").

The Commissioner argues, however, that the discrepancy between the RFC finding and the hypothetical question is not grounds for remand because "a hypothetical question may be incomplete, yet can still accurately portray a claimant's limitations." Memorandum in Opposition, Doc. 15, at 9. The Commissioner asserts that this "may be the case here" and that the ALJ "arguably" informed the vocational expert that he should testify about jobs which did not have fast-paced production requirements. Id. Apart from the equivocal and speculative nature of this argument, there is nothing in the record to support it. The Commissioner's effort to equate jobs which involve simple tasks and do not require much in the way of

-9-

decision-making or changes in the workplace with jobs having no strict production pace or quotas fails for the simple reason that a reasonable person could not conclude, on the basis of the present record, that the two are equivalent. Common sense suggests otherwise; many simple, repetitive jobs do not require the worker to make decisions or adapt to changes in routine, but they can involve meeting production quotas or working at a rapid pace. Cf. Foster v. Comm'r of Social Security, 2014 WL 3536603, *4 (S.D. Ohio June 23, 2014)("a limitation on changes in a routine work setting simply is not equivalent to limitations in persistence and concentration, or an inability to work at a fast pace or to meet production quotas"), adopted and affirmed 2014 WL 3543818 (S.D. Ohio July 16, 2014). Can the jobs identified by Mr. Womer be performed by someone who cannot meet production quotas or work at a rapid pace? He never said so because he was never asked. Consequently, the ALJ did not have substantial evidence to support her conclusion that Plaintiff, as limited by her RFC, could do these jobs, and a remand is required for that reason alone.

### B. Other Issues

Of the other three issues raised in the statement of errors, two have substantial merit. The Court does not find any problem with the ALJ's treatment of Plaintiff's obesity; Plaintiff has not described any specific functional limitations due solely to obesity which were not considered by the treating, consulting, or reviewing physicians. However, there are serious issues with the adequacy of the ALJ's statement of reasons for discounting the opinions of the treating sources - particularly Dr. Brandemihl - which should be addressed on remand, and the Court also has concerns about the ALJ's rationale for discounting Plaintiff's credibility.

Turning first to the ALJ's reasoning in rejecting all of the treating source opinions, it has long been the law in social

security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

    The ALJ's discussion of both Dr. Adams' and Dr. Brandemihl's opinions is extremely brief.  As to Dr. Adams, the ALJ stated, without much elaboration, that she gave some weight to Dr. Adams' "specific diagnoses and symptoms," but no weight to his opinion about whether Plaintiff could work.  While that statement borders on a vocational assessment, it reflects Dr. Adams' view that Plaintiff's symptoms, particularly pain and fatigue, are incompatible with the physical demands of regular work; the ALJ gave no reasons for disregarding that view (not even the reason that his statement about work was not a medical opinion), and only general reasons for adopting the opposite view of Dr. Binns

- namely, that Dr. Binns' opinion was supported by the "medical record as a whole." (Tr. 21). Since Dr. Adams, whose records (and the records of the specialist to whom he referred Plaintiff) make up much of the medical record, and because many of those records post-date Dr. Binns' opinion, it is very difficult for the Court to determine exactly why the ALJ gave no credence to Dr. Adams' opinion.

This problem is even more pronounced with respect to Dr. Brandemihl's opinion. The ALJ made only the conclusory statements that his opinion "overstates the extent of [Plaintiff's] mental impairments" and that "the record as a whole suggests she is capable of working with appropriate restrictions." (Tr. 21). These are not explanations of how the ALJ reached her conclusions. This Court has consistently rejected, under Wilson, statements to the effect that the "record as a whole" contradicts and undermines the opinion of a treating source. See, e.g., Dexter v. Comm'r of Social Security, 2014 WL 4467666, *5 (S.D. Ohio Sept. 9, 2014) (a generalized reference to the 'medical record of evidence,' without any explanation of what portions of that record are being relied on, [is] simply insufficient"). Further, the ALJ did not give much weight to the state agency reviewers' opinions, finding that, contrary to their views, Plaintiff did have severe psychological impairments, so that could not constitute the evidence used to reject Dr. Brandemihl's opinion. The ALJ's decision on this point is simply incapable of being reviewed. On remand, Dr. Brandemihl's opinion should be evaluated under the proper regulatory factors and in a manner consistent with the Court of Appeals' decisions on this matter, including Gayheart v. Comm'r of Social Security, 710 F.3d 365, 377 (6th Cir. 2013) and Blakley v. Comm'r of Social Security, 581 F.3d 399, 406-07 (6th Cir. 2009).

As far as credibility is concerned, a social security ALJ is not permitted to reject allegations of disabling symptoms,

including pain, solely because objective medical evidence is lacking.  Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors.  20 C.F.R. §404.1529(c)(3).  Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record.  See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

Here, Plaintiff argues that the ALJ's stated reasons for discounting her testimony - that she could still engage in activities of daily living, had only recently begun to see a psychiatrist, and that her testimony was not generally consistent with the medical evidence - are simply insufficient.  The Commissioner's memorandum addresses only the first of these three reasons, arguing that an ALJ is permitted to take into account activities of daily living in making her credibility finding.  While that is a correct statement of the law, see Murphy v. Comm'r of Social Security, 2014 WL 5432125, *8 (S.D. Ohio Oct. 27, 2014)("an ALJ may take activities of daily living into account in making a credibility determination"), that does not directly address Plaintiff's contention that nothing in her testimony or other descriptions of her activities of daily living supports the proposition that she can work an eight-hour day.  The ALJ cited accurately to Plaintiff's statements, made in various places in the record, that her household chores could be done only in spurts and that she was unable to sustain activity for any period of time.  Without citing to any contrary evidence, the ALJ seemingly concluded that these consistent descriptions of

Plaintiff's abilities somehow undercut their credibility.  There may be reasons in this record for discounting Plaintiff's testimony to some extent, but the ALJ did not cite to them with enough specificity to allow for meaningful review.  This matter, too, should be corrected on remand.

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp

United States Magistrate Judge